No. 13-1473
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

REYA BOYER-LIBERTO

Plaintiff-Appellant

v.

FONTAINEBLEAU CORPORATION, ET AL.

Defendants-Appellees
_____

Appeal from the United States District Court
for the District of Maryland
(Honorable James K. Bredar)
_____

**PETITION FOR REHEARING OR FOR EN BANC REHEARING**
_____


ROBIN R. COCKEY
COCKEY, BRENNAN & MALONEY, PC
313 Lemmon Hill Lane
Salisbury Maryland 21801
(410) 546-1750
*Attorney for Appellant*

# TABLE OF CONTENTS

I. STATEMENT REQUIRED BY FEDERAL RULE OF APPELLATE PROCEDURE 35 AND 4TH CIRCUIT LOCAL RULE 40 ....................... 1

   A. INTRODUCTION ................................................................................. 1

   B. STATEMENT OF PURPOSE ................................................................ 1

II. DISCUSSION ................................................................................................ 3

   A. The Summary Judgment Record ............................................... 4

   B. The District Court Decision ....................................................... 5

   C. The Panel Decision ..................................................................... 7

   D. Analysis ....................................................................................... 9

III. REQUEST FOR RELIEF ............................................................................ 14

CERTIFICATE OF SERVICE .............................................................................. 15

# **TABLE OF AUTHORITIES**

**CASES**                                                                                             **PAGE**

*Ash v. Tyson Foods,* 664 F. 3d 883 (11th Cir. 2011) ............................................. 13

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ................... 1, 10, 11, 12

*Beardsley v. Webb*, 30 F. 3d 524 (4th Cir. 1994) ...................................................... 6

*Burlington Industries, Inc. v. Ellerth*, 524 US 742 (1998) ................................. 2, 12

*EEOC v. Navy Federal Credit Union*, 424 F. 3d 397 (4th Cir. 2005) ................... 2, 7

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ........................................ 2, 12

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993) .................................................. 2, 6

*Jordan v. Alternative Resources Corp.,* 458 F.3d 332
    (4th Cir. 2006) ................................................................... 6, 7,8, 9, 10, 12

*Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261 (4th Cir.2001) ............. 2, 12

*White v. BFI Wastewater Services*, 375 F. 3d 288 (4th Cir. 2004) ......................... 11

*Walker v. Thompson*, 214 F. 3d 615 (5th Cir. 2000) ............................................... 11

**STATUTES, RULES, & CONSTITUTIONAL PROVISIONS**                        **PAGE**

42 USC § 2000(e) ...................................................................................................... 3

42 USC § 1981 .......................................................................................................... 3

Federal Rule of Civil Procedure 56(c) ................................................................. 6, 8

# I. Statement Required by Federal Rule of Appellate Procedure 35 and Fourth Circuit Local Rule 40

## A. Introduction

Appellant Reya Boyer-Liberto, an African-American, was fired immediately after complaining she had twice been called a "porch monkey," addressed as "girl" and threatened by a Caucasian manager. This Court's panel[1] upheld the entry of summary judgment in favor of her employer upon workplace harassment and retaliation claims. The panel treated the two occasions of racial invective as a "single incident" because they arose from the same event, and, as such, held they were neither "severe" nor "pervasive" enough to constitute actionable workplace harassment. The panel went on to hold that Appellant could be fired with impunity for her complaint because it did not attack conduct a "reasonable juror" could find unlawful.

The panel decision conflicts with other decisions of this Circuit, other circuits (most strikingly *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013)) and the Supreme Court, and raises questions of exceptional importance to the protection of workplace freedoms.

## B. Statement of Purpose

Appellant's purpose in seeking rehearing and en banc review is to secure

---

[1] Chief Judge Traxler; Judges Shedd and Niemeyer. The majority opinion was by Judge Niemeyer; Judge Shedd filed a concurring opinion and Chief Judge Traxler partially dissented, opining that Appellant's retaliation claims should not have been dismissed.

1

uniformity of decisions upon important principles of employment law.

The panel decision conflicts with decisions of this and other Circuits, and cannot be reconciled with established Supreme Court jurisprudence:

(1) The panel decision cannot be reconciled with Supreme Court rulings[2] that harassment victims must make timely complaints as incidents of harassment occur, in that it holds such victims may be fired without recourse if the incidents of which they complain have not continued long enough to comprise "pervasive" harassment;

(2) The panel decision abrogates the prevailing doctrine that protected discrimination complaints need only arise from an "objectively reasonable" perception of unlawful discrimination[3], by requiring that the underlying conduct actually be such that a "reasonable juror" could find it unlawful;

(3) The panel decision misapplies the "severe or pervasive" test governing hostile environment harassment claims, as mandated in *Harris v. Forklift Sys. Inc.*, 510 US 17 (1993), by holding that multiple episodes of egregious racial abuse may be dismissed as an unactionable "single incident" because they arose from the same altercation.

---

[2] *Faragher v. City of Boca Raton*, 524 US 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 US 742 (1998).  See, also, *Matvia v. Bald Head Island*, 259 F.3d 261 (4th Cir. 2001).
[3] See, *EEOC v. Navy Federal Credit Union*, 424 F.3d 397 (4th Cir. 2005).

2

It is of exceptional importance the panel decision be reviewed and reversed because it withdraws long-standing protections afforded victims of workplace harassment, forcing them into a "Catch-22" in which they must either complain and get fired or keep silent and forgo legal redress.

## II. Discussion

Appellant, an African-American waitress at a resort hotel, brought suit against her former employer and its principal as a result of her termination, which followed four days after she complained a Caucasian manager – the owner's long-time confidante – had on two separate occasions threatened her, called her "porch monkey," and addressed her as "girl." Appellant made claims of racial harassment and retaliation under 42 USC § 2000(e) ("Title VII"), and 42 USC § 1981. The district court granted summary judgment on all claims, and this appeal ensued. The panel, in a decision by Judge Niemeyer (Judge Shedd concurring separately) affirmed, subject to a partial dissent by Chief Judge Traxler, who favored reversal of the district court's dismissal of the retaliation claims. Appellant now seeks rehearing and/or en banc review, on the grounds the panel decision conflicts with decisions of this and other Circuits and presents questions of exceptional public importance.

A. <u>The Summary Judgment Record</u>[4]

On August 4, 2010, Appellant began working at the Clarion, a resort hotel in Ocean City, Maryland. The Clarion is owned by Appellee Fontainebleau Corporation, Inc., which, in turn, is owned and operated by Appellee Dr. Leonard Berger. Appellant began rotating through a series of hostess and waitress positions at the Clarion, in conformity with its established practice for new hires. After Labor Day ended the summer season, Appellant was retained as part of the Clarion's year-round staff. On September 14, an incident occurred in which Appellant cut through the hotel kitchen to try to save time delivering a specially-ordered cocktail to a patron. Weekend manager Trudy Clubb approached Appellant and began "screaming loudly" at her. Addressing Ms. Liberto as "girl," Ms. Clubb stood so close to her Appellant "could feel her breath" and Ms. Clubb's spittle flew into Appellant's face. Ms. Clubb screamed she "was going to get" Appellant and "make [her] sorry." Ms. Clubb then called Appellant a "damn porch monkey" and left. The next day, September 15, while Appellant was speaking with her boss, Richard Heubeck, Ms. Clubb came into the office, interrupted Appellant and said, "I need to speak to you, little girl." When Appellant

---

[4] There follows a brief statement of undisputed facts, presented in the light most favorable to Appellant, as required for consideration of summary judgment. The panel decision departed from this precept, presenting the facts with many important inferences drawn against Appellant (as, for example, by asserting that Appellant had been criticized for poor performance – an assertion categorically denied by Appellant).

remonstrated she was meeting with her supervisor, Ms. Clubb, known to be a close associate of Dr. Berger, replied she was "more important" and ordered Appellant to follow her out of the office. As they sat together, Ms. Clubb again chastised Appellant for cutting through the kitchen, became agitated and again yelled at Appellant. As the two were rising from their chairs, Ms. Clubb threatened "she was going to go to Dr. Berger" and was "going to make [Appellant] sorry." Ms. Clubb then – loudly – called Appellant a "porch monkey." On September 17, Appellant complained to Nancy Berghauer, Clarion's Human Resource Director. After reducing the complaint to writing, Ms. Berghauer forwarded it to Dr. Berger later that day. Upon reviewing the complaint and Appellant's file (which was bereft of any disciplinary action, reprimand, warning or other indicia of poor performance), Dr. Berger ordered Mr. Heubeck to fire Appellant, which he did Appellant's next day at work, September 21[5].

## B. The District Court Decision

At the conclusion of discovery, Appellees moved for summary judgment on all claims. In granting the motion, the district court began with consideration of

---

[5] Dr. Berger only reviewed Appellant's personnel file because he had learned of Appellant's complaint. The file reflected that, as part of her job interview, Appellant had failed to complete a bartending test (not, as the panel decision asserts, that she had failed it). The point in any event is immaterial because Appellant was hired anyway, and did not tend bar as part of her job duties.

5

Appellant's workplace harassment claims, applying the "severe or pervasive" test.[6] The court limited the field of racist comments attributed by Appellant to Ms. Clubb, excluding Interrogatory Answers filed in opposition to the motion by Appellant. In the Answers, Appellant had asserted Ms. Clubb "compared [her] skin tone to that of another African-American employee … routinely referred to Hispanic employees as ‑Chihuahuas' … [and] often reminded [Appellant] to ‑remember [her] place.'" Although Federal Rule of Civil Procedure 56(c) expressly directs consideration of summary judgment be predicated upon "discovery … materials on file," the district court excluded the interrogatory answers because they followed a boiler plate disclaimer that they reflected the assistance of counsel, and were signed "on knowledge, information and belief." Having thus eliminated all racial abuse attributed to Ms. Clubb with the exception of the two "porch monkey" incidents, the district court held that, under this Court's decision in *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006)[7],

---

[6] Established in *Harris v. Forklift Systems*, *supra*, and first applied by this Court in *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994). Because "severity" and "pervasiveness" are to be assessed in light of an overview of Plaintiff's working environment, it is sometimes termed the "totality of circumstances" test.

[7] In *Jordan*, Plaintiff was present when a co-worker, referring to the DC snipers, said, "they should put those two black monkeys in a cage with a bunch of black apes and let the apes fuck them." Plaintiff, who was African-American, complained and was promptly fired. This Court, in a decision by Judge Niemeyer, upheld summary judgment on Plaintiff's racially harassment and retaliation claims, reasoning that the single remark overheard by Plaintiff did not constitute racial harassment and could not reasonably be regarded as such. Judge King dissented, pointing out that the Court's ruling created a "Catch-22" when applied together with long-standing requirements that incidents comprising harassment each be timely reported.

the two incidents of racial invective were too "isolated" to constitute actionable workplace harassment. The district court then turned to Appellant's retaliation claim, purporting to apply the "objectively reasonable" standard endorsed by this Court in *Navy Federal Credit Union*, and may other cases. However, citing *Jordan*, the district court simply held that, because (in the court's view) Ms. Clubb's conduct did not constitute actionable harassment, no objectively reasonable person could believe that it did.

    This appeal ensued.

### C. The Panel Decision

The panel (subject to Chief Judge Traxler's dissent) adopted the district court's reasoning wholesale. The panel anchored its opinion in a version of the facts presented in the light most favorable to Appellees. (For example, the court dilated upon Appellant's supposed performance problems, drawing exclusively from deposition testimony offered by Mr. Heubeck. Even though Mr. Heubeck's assertions were equivocal and flatly contradicted by Appellant, even though they were unsupported by any disciplinary action or other objective indicator, even though Appellant was retained as an employee after the end of the summer season, and even though the person who fired Appellant, Dr. Berger, had no personal knowledge of her performance at all, the panel decision unfairly presented her as a poor employee.) Throughout, the panel decision minimized Ms. Clubb's

7

importance, casting her as a mere "co-worker," omitting Ms. Clubb's uncontradicted assertion she was "more important" than Appellant's direct supervisor, and downplaying Ms. Clubb's role as Dr. Berger's long-time confidante. Having improperly drawn the available inferences in favor of Appellees, the court followed the district court's path in "winnowing the field:" The panel, without mentioning the racist remarks attributed by Appellant to Ms. Clubb in her Answers to Interrogatories, and ignoring FRCP 56(c)'s directive about consideration of discovery materials, adopted the district court's exclusion of Appellant's Interrogatory Answers.[8] The panel then turned to consideration of the two occasions on which Ms. Clubb threatened Appellant and called her a "porch monkey." Attributing great significance (though without explanation) to the fact both episodes of invective arose from Ms. Clubb's annoyance at Appellant having cut through the kitchen to deliver a drink on time, the panel collapsed the two incidents into one, analogizing the case to *Jordan*'s single incident of racial abuse. The panel disregarded the critical differences between this case and *Jordan* (e.g. that, in *Jordan*, the racial abuse was not directed at Plaintiff, was not accompanied by any threats toward Plaintiff, and actually was a single incident – not one of several arising from the same cause). Having ignored this case's important,

---

[8] The racist comments attributed to Ms. Clubb in the Interrogatory Answers – principally that she referred to Hispanic employees as "Chihuahuas," and often admonished Appellant to "remember [her] place" – were referenced however in Ms. Berghauer's notes, forwarded to Dr. Berger with Appellant's Complaint and attached as Exhibits to the parties' summary judgment papers.

distinguishing factors, the panel held that, as in *Jordan*, the facts in this case presented an unactionable "single incident" of racial abuse. The panel went on to opine that, "if no objectively reasonable <u>juror</u> could have found the presence of a hostile work environment, as we today hold, it stands to reason that <u>Liberto</u> also could not have had an objectively reasonable belief that a hostile work environment existed" (Panel Decision, at 20; emphasis in the original).

Chief Judge Traxler concurred in the panel decision's dismissal of Appellant's racial harassment claim, but dissented as to the retaliation claims, pointing out that the decision presented workers with an untenable dilemma in which they must either complain and risk termination or stay silent and lose the right to seek legal redress.

### D. <u>Analysis</u>

The panel decision effectively repeals the "objectively reasonable" standard long-applied to retaliation cases. Here, the panel ruled that, to be protected from retribution, a complaint must attack conduct a "reasonable juror" could find illegal. That ruling is at odds with established precedent to the effect that the underlying complaint need not be of actionable misconduct but must merely reflect an "objectively reasonable" belief the conduct was wrongful. In effect, the panel decision would require victims of workplace harassment – who have no legal training – to complain only if their mistreatment would support claims sufficient to

9

survive summary judgment, an analysis which, manifestly, daunts even experienced employment lawyers.

To reach that anomalous conclusion, the panel further departed from precedent by treating two episodes of racial invective directed at Appellant by the same manager as a "single incident" because they arose from the same underlying cause: Ms. Clubb's anger that Appellant had taken a short-cut to deliver a drink on time. Building upon that unstable foundation, the panel misapplied this Court's ruling in *Jordan* (finding a single incident of racial slurs merely overheard by Plaintiff inadequate to establish a hostile workplace environment) to conclude that the harassment about which Appellant complained in this case was not actionable.

The panel decision is directly at odds with the well-reasoned decision of the District of Columbia Circuit in *Ayissi-Etoh*, 712 F.3d at 572, a strikingly similar case. In *Ayissi-Etoh*, Plaintiff, an African-American, was denied a raise on being told he was already making enough money "for a smart black man," and then, following an altercation with a supervisor, was told "get out of my office, nigger." Plaintiff filed an EEOC complaint and was then fired. Plaintiff's suit, making claims for racial harassment and retaliation, was dismissed on summary judgment. The District of Columbia Circuit reversed, citing the "deeply offensive" character of the racial epithet used against the Plaintiff; the Court reasoned that, although an explicitly racist epithet was applied to Plaintiff only once, it had been preceded by

the prior episode in which Plaintiff was patronized as a "smart black man." In a concurrence, Judge Kavanagh opined that the single application of the term "nigger" to Plaintiff, even without the prior incident involving the "smart black man" remark, would have sufficed to support claims for racial harassment and retaliation.

The panel decision attempts implausibly to distinguish the present case from *Ayissi-Etoh* on the grounds that the two incidents of racial abuse in this case arose from a single originating event, whereas the two incidents in *Ayissi-Etoh* were unrelated. However, the panel fails to explain why it should matter to the victim whether multiple instances of abuse stemmed from one underlying cause or many. Significantly, *Ayissi-Etoh* presented a less disturbing set of facts, in that the first of the two incidents of abuse in that case involved no racial epithets at all: Plaintiff was simply told he was already making enough money "for a smart black man." In this case, Appellant was twice likened to a jungle animal, which the courts have held to constitute particularly egregious racial abuse. See, also *White v. BFI Wastewater Services*, 375 F.3d 288 (4th Cir. 2004); *Walker v. Thompson*, 214 F.3d 615 (5th Cir. 2000) (abrogated on other grounds).. Moreover, in this case, (unlike *Ayissi-Etoh*), the racist remarks were directed at Plaintiff by the same manager, coupled with manifestly effectual threats to "go to [the owner]" and "make her sorry." And – unlike the angry outburst in *Ayissi-Etoh* – the racial epithets in this

11

case were hurled at their target on consecutive days, clearly indicating they arose from premeditation and not from an isolated tantrum.

Nor can the decision of the panel be reconciled with prevailing Supreme Court jurisprudence, which holds that employees may not maintain workplace harassment suits unless they complained of the harassing actions as they occurred. *Faragher* 523 US at 775; *Ellerth* 524 US at 742. See, also, *Matvia* 259 F.3d at 397. As has been noted by Chief Judge Traxler in his dissent, and elsewhere, (dissenting opinion of Judge King in *Jordan*, 458 F.3d at 332; concurring opinion of Judge Kavanagh in *Ayissi-Etoh* 712 F.3d at 572, the rationale adopted by the panel decision relegates employees to a õCatch-22ö in which they must choose either to complain, and lose their job, or to keep silent, and lose their right to legal redress.

The reasoning of the panel raises issues of exceptional public importance because, if applied generally, it would deter workers from asserting rights which, in theory, are federally protected: On the one hand, under the panel decision, employees who complain at the onset of harassment may be fired with impunity; on the other hand, under *Faragher* and *Ellerth*, employees who do not complain until the harassment is sufficiently pervasive to support a law suit may not maintain that lawsuit because they did not complain when the harassment began.

Thus, without en banc review of the panel decision, well-established

workplace rights to freedom from harassment on the basis of race, gender, age or disability will be abrogated, a consequence of enormous significance. By holding that the use of racist epithets such as "porch monkey" is not "severe" and may not reasonably be perceived as such, the panel in effect holds that it is tolerable, that it is abuse which an employee must accept as a condition of continued employment. But that is an extraordinary and onerous imposition, for name calling of that sort is more than mere discourtesy: As this and other courts have correctly held, likening a human being to a jungle animal is grossly disrespectful and plays upon racist caricatures and stereotypes too notorious to need reiteration. Similarly, addressing an adult African-American as "boy" or "girl" is an unmistakable allusion to antebellum racial disparities. See, *Ash v. Tyson Foods*, 664 F. 3d 883 (11th Cir. 2011). But, submission to racist invective should not be a job requirement.

In effect, by holding that workers who complain of discrimination must "get it right" on arcane legal points about which lawyers disagree, or face termination if they "get it wrong," the panel would turn the workplace into a duty-free zone for bigotry. While no one professes to "condone" the practice of addressing African-American employees as "porch monkeys," the effect of the panel decision is to force them to put up with it or get fired. The panel decision fails to explain why employees should have to endure racist humiliation as the price of keeping their jobs. There is no good explanation: The panel decision should be reviewed and

reversed.

## III. Request for Relief

For these reasons, it is respectfully requested this Honorable Court either grant either a rehearing or a rehearing en banc.

Respectfully submitted,

_____/s/_____
ROBIN R. COCKEY
COCKEY, BRENNAN & MALONEY, PC
313 Lemmon Hill Lane
Salisbury MD 21801
(410) 546-1750
Attorneys for Appellant

## CERTIFICATE OF SERVICE

  I certify that on May 27, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving two true and correct copies at the addresses listed below:

  Harriet E. Cooperman, Esquire
  Saul Ewing, LLP
  500 East Pratt Street
  8th Floor
  Baltimore, MD 21202


_____/s/_____          _May 27, 2014_____ _____
Signature                            Date